# Exhibit 7

## (Amended)

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| DDB Technologies L.L.C., | |
| *Plaintiff/Counterdefendant,* | Civil Action No. A-11-cv-00929-LY |
| v. | |
| Fox Sports Interactive Media, LLC, | JURY DEMAND |
| *Defendant/Counterclaimant.* | |

## PROPOSED JURY INSTRUCTIONS

Text highlighted in blue is text that Defendant proposes and to which Plaintiff has not agreed.

Text highlighted in yellow is text that Plaintiff proposes and to which Defendant has not agreed.

Members of the Jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

## PRELIMINARY INSTRUCTIONS

### I.     WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to four United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing into the United States, without the patent holder's permission, until the expiration of the patent. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a specification, which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent claims. When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (qualified for patent protection) and whether

2

or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called prior art. The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the cited references.

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be allowed. This writing from the Examiner is called an Office Action. If the Examiner rejects the claims, the applicant has the opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. The papers generated during these communications between the Examiner and the applicant are called the prosecution history.

Once a patent is issued by the PTO, it is presumed to be valid. However, a person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. The fact that the PTO

grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. It is your job to consider the evidence presented by the parties and determine independently whether or not Fox Sports Interactive Media has proven that the patent is invalid.[1]

## II.    PATENTS AT ISSUE

The parties in this case are DDB Technologies and Fox Sports Interactive Media. The case involves four United States patents obtained by inventors David Barstow and Daniel Barstow and currently owned by DDB Technologies. Those four patents are U.S. Patent No. 5,526,479, U.S. Patent No. 5,671,347, U.S. Patent No. 6,204,862, and U.S. Patent No. 7,373,587. For your convenience, the parties and I will often refer to the patent numbers by the last three numbers of the patent number, namely, as the "'479 patent," the "'347 patent," the "'862 patent," and the "'587 patent." When referring to this entire group of patents, the parties and I will often refer to them as the DDB Patents.

Copies of each of the DDB Patents have been placed in your notebooks. In addition, I have already determined the meaning of the claims of the DDB patents. For any claim term for which I have not provided you with a definition, you should apply the ordinary meaning. You have been given a chart that reflects my order determining those meanings in your notebook.[2]

---

[1] The Federal Circuit Bar Association Model Patent Jury Instructions ("FCBA") (2013), Preliminary Instruction A.1 (*modified*).

[2] FSIM objects to the constructions of the following terms: "an action involving physical exertion and skill," "broadcasting," "creating a set of symbols useful in a computer simulation," "generating a sequence of symbolic descriptions," and "representing at least one of the sub-events." FSIM proposes the following instructions for these claims terms: "The term 'broadcasting' means 'One-way transmission of the same data simultaneously to multiple viewer computers.' The term 'creating a set of symbols useful in a computer simulation' means 'creating a set of symbols to be entered by an observer of the live event, for use in a computer simulation program.' The term 'generating a sequence of symbolic descriptions' means 'generating, by the observer of the live event, a sequence of symbolic descriptions.' The term 'representing at least one of the sub-events by at least on action type' means 'representing, by the observer of the live event, at least on action type.'" " FSIM asserts that these constructions are

You are to apply my definitions of these terms throughout the case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.[3]

## III.   OVERVIEW OF APPLICABLE LAW

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Fox Sports Interactive Media has infringed the claims of the DDB patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however Fox Sports Interactive Media may infringe the DDB patents by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a method meeting all the requirements of a claim of the DDB patents. Fox Sports Interactive Media may also indirectly infringe the DDB patents by inducing another person or

appropriate for the same reasons given in its Opening Claim Construction Brief (Dkt. 38) and Responsive Claim Construction Brief (Dkt. 43). FSIM recognizes that the Court has already construed the claims in this case, and proposes this jury instruction in order to preserve error. In addition, FSIM continues to assert that the term "an action involving physical exertion and skill" is indefinite for the reasons set forth in FSIM's Motion for Summary Judgment of Indefiniteness (Dkt. 34) and FSIM's Reply in Support of its Motion for Summary Judgment of Indefiniteness (Dkt. 42). FSIM recognizes that the Court has already ruled on FSIM's argument, and merely objects to this jury instruction in order to preserve error.

[3] FCBA A.4 (*modified*).

entity to infringe. I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the DDB patents are invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. For a claim to be invalid because it is not new, Fox Sports Interactive Media must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention(s) claimed in the DDB patents are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

If you decide that any claim of the DDB patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to DDB to compensate it for the infringement. A damages award should put DDB in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what DDB would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate DDB and not to punish Fox Sports Interactive Media. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate DDB

for the infringement, in order to punish Fox Sports Interactive Media. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

## IV.    SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

DDB Technologies ("DDB") filed suit in this court seeking money damages from Fox Sports Interactive Media for allegedly infringing the DDB patents by using the methods of the DDB patents to provide [live game simulation] [various accused] products.

The products that are alleged to infringe are: the Pre-June 25, 2010 GameTrax webpages for football and baseball provided through the Fox Sports Interactive Media website; the Pre-June 25, 2010 Fox Sports Interactive Media Scoreboard webpages for baseball provided through the Fox Sports Interactive Media website; the Pre-June 25, 2010 Scorestrip for baseball provided through the Fox Sports Interactive Media website; and the Pre-June 25, 2010 GameTrax pages for baseball and football provided through Fox Sports Interactive Media's iPhone mobile application.

Fox Sports Interactive Media denies that it has infringed any claims of the DDB patents. Fox Sports Interactive Media also argues that the claims of the DDB patents are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time.

In addition, Fox Sports Interactive Media argues that the DDB patents are unenforceable because the patent applicants committed inequitable conduct while prosecuting the patent applications in the Patent Office. Fox Sports Interactive Media also argues that DDB may not recover damages for activities occurring before this lawsuit under the doctrine of laches and that DDB is precluded from enforcing its patents against Fox Sports Interactive Media under the

doctrine of equitable estoppel. Finally, Fox Sports Interactive Media contends that DDB is precluded from recovering damages for some of Fox Sports Interactive Media's products under the doctrine of patent exhaustion. I will instruct you on these doctrines at a later time.

Your job will be to decide whether or not the claims of the DDB patents have been infringed and whether or not those claims are invalid. If you decide that any claim of the DDB patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to DDB to compensate it for the infringement. You will also need to make a finding as to whether or not the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.[4]

## V.    OUTLINE OF TRIAL

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, *i.e.*, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, *i.e.*, that you have been left with a clear conviction that the fact has been proven.

---

[4] FCBA A.3 (*modified*)

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, DDB will present its evidence in support of its contention that some of the claims of the DDB patents have been infringed by Fox Sports Interactive Media and that the infringement has been willful. To prove infringement of any claim, DDB must persuade you that it is more likely than not that Fox Sports Interactive Media has infringed that claim. To persuade you that any infringement was willful, DDB must prove that the infringement was willful by clear and convincing evidence.

Fox Sports Interactive Media will then present its evidence that the claims of the DDB patents are invalid and/or unenforceable. To prove invalidity and/or unenforceability of any claim, Fox Sports Interactive Media must persuade you by clear and convincing evidence that the claim is invalid and/or unenforceable. In addition to presenting its evidence of invalidity and/or unenforceability, Fox Sports Interactive Media will present evidence of other defenses, including laches, exhaustion, and estoppel. Fox Sports Interactive Media will also present evidence responding to DDB's evidence of infringement and willfulness.

DDB may then present additional evidence responding to Fox Sports Interactive Media's evidence that the claims of the DDB patents are invalid and/or unenforceable, and to offer any additional evidence of infringement and willfulness. This is referred to as "rebuttal" evidence.

DDB's "rebuttal" evidence may respond to any evidence offered by Fox Sports Interactive Media.

Finally, Fox Sports Interactive Media may have the option to present its "rebuttal" evidence to support its contentions as to the validity and/or unenforceability of the claims of the DDB patents by responding to any evidence offered by DDB on that issue.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.[5]

**FINAL INSTRUCTIONS**

I.      **GENERAL INSTRUCTIONS FOR THE JURY**

You have heard the evidence in this case and in a moment you will hear the arguments of the lawyers for the parties, but first, I will instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the lawyers will have an opportunity to make their closing arguments. Statements and arguments of the lawyers are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

---

[5] FCBA A.5 (*modified*).

You will be given questions to answer concerning the issues in this case. Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

### A.     Consideration of the Evidence

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

There are two types of evidence you may consider. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from the evidence, both direct and circumstantial.

In determining whether any fact has been proved in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

You are the sole judges of the credibility or believability of each witness and the weight to be given the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should decide whether you believe what each person had to say and how important that testimony was. In making that decision, and in determining the weight to give to the testimony of a witness, I suggest you ask yourself a few questions: Did the person impress you as honest? Did the witness have any particular reason not to tell the truth? Did

the witness have a personal interest in the outcome of the case? Did the witness have any relationship with any party to the case? Did the witness have a good memory? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? These are a few considerations that may help you determine the accuracy of what each witness said.

**B.      Evidence in the Case**

If a lawyer asked a witness a question that contained an assertion of fact, you may not consider the lawyer's assertion as evidence of that fact. The lawyers' statements are not evidence. When, however, the lawyers on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard the fact as proved.

Unless you are otherwise instructed, the evidence in this case always consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted or stipulated.

Any evidence as to which an objection was sustained by the court, any evidence ordered stricken by the court, and any testimony, exhibit, or conduct that the court has instructed you to disregard must not be considered by you and must not be used for any purpose in reaching your verdict.

**C.      Evidence for a Limited Purpose**

During the course of this trial I may have instructed you that I admitted certain evidence for a limited purpose or that you may consider some testimony as evidence against one party but

not against another or for a certain purpose and not for others. You may consider such evidence only for the specific limited purpose for which it was admitted.

### D.    All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

### E.    Deposition Testimony

The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented under oath, in the form of a deposition. A deposition is the sworn, recorded answers to questions asked of a witness in advance of the trial. During the trial of this case, certain deposition testimony has been presented to you by video recording or the reading of such deposition testimony. Such testimony is entitled to the same consideration and is to be judged as to credibility, weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand in court.

### F.    Expert Witness

When knowledge of a technical matter may be helpful to the jury, a witness who has special experience or training is permitted to testify and state an opinion concerning such technical matters. Merely because an expert witness has expressed an opinion does not mean you must accept the opinion. As with any other witness, it is up to you to determine the credibility or believability of the expert witness and the weight to be given the expert's testimony. You may decide to rely on the expert's testimony or to disregard that testimony completely.

### G.      Impeachment by Witnesses' Inconsistent Statements

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something or failed to say or do something, that was different from the testimony the witness gave at this trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

### H.      Corporate Party Involved

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

A corporation can act only through people who are its agents or employees. In general, a corporation is responsible under the law for any of the acts and statements of its employees or agents that are made within the scope of their duties as employees or agents of the corporation.

### I.      Use of Notes Taken by Jurors

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

**J.      Burden of Proof**

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, *i.e.*, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, *i.e.*, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

In determining whether any fact has been proved by the applicable burden of proof in this case, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the party's claim, counterclaim, or affirmative defense by the applicable burden of proof, you should find for the other party as to that claim, counterclaim, or affirmative defense.

## II.      SUMMARY OF CONTENTIONS

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

DDB Technologies ("DDB") filed suit in this court seeking money damages from Fox Sports Interactive Media Interactive Media for allegedly infringing the DDB patents by using the methods of the DDB patents to provide [live game simulation] [various accused] products through its website and mobile applications.

The products that are alleged to infringe are: the GameTrax webpages for football and baseball provided through the Fox Sports Interactive Media website; the Scoreboard webpages for baseball provided through the Fox Sports Interactive Media website; the Scorestrip for baseball provided through the Fox Sports Interactive Media website; and the GameTrax pages for baseball and football provided through Fox Sports Interactive Media's iPhone mobile application.

Fox Sports Interactive Media denies that it has infringed claims of the DDB patents. Fox Sports Interactive Media also argues that the claims of the DDB patents are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

In addition, Fox Sports Interactive Media argues that the DDB patents are unenforceable because the patent applicants committed inequitable conduct while prosecuting the patent applications in the Patent Office. Fox Sports Interactive Media also argues that DDB may not recover damages for activities occurring before this lawsuit under the doctrine of laches and that DDB is precluded from enforcing its patents against Fox Sports Interactive Media under the

doctrine of equitable estoppel. Finally, Fox Sports Interactive Media contends that DDB is precluded from recovering damages for some of Fox Sports Interactive Media's products under the doctrine of patent exhaustion. I will instruct you on these doctrines at a later time.

Your job will be to decide whether or not the claims of the DDB patents have been infringed and whether or not those claims are invalid. If you decide that any claim of the DDB patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to DDB to compensate it for the infringement. You will also need to make a finding as to whether or not the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.[6]

## III.    THE ROLE OF THE CLAIMS OF A PATENT

Before you decide many of the issues in this case, you will need to understand the role of patent claims. The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions

---

[6] FCBA B.1 (*modified*).

to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.[7]

## IV.    HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as claim elements or claim limitations. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to cover that thing, and that thing is said to fall within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply those definitions that I provide to you.

---

[7] FCBA B.2.1.

By understanding the meaning of the words in the claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.[8]

## V.    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent and dependent claims.

An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case claim 1 of the '479 patent, claim 1 of the '347 patent, claim 1 of the '862 patent, and claim 5 of the '587 patent are each independent claims.

The remainder of the claims of the DDB patents are dependent claims. A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by the dependent claim.[9]

## VI.   CLAIM INTERPRETATION

At the beginning of the trial, I explained to you the meaning of some of the words of the claims in this case. As I have previously instructed you, you must accept my definition of these

---

[8] FCBA B.2.2.

[9] FCBA B.2.2a

words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply their common meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.[10]

## INFRINGEMENT

### I.     INFRINGEMENT – GENERALLY

I will now instruct you as to the rules you must follow when deciding whether DDB has proven that Fox Sports Interactive Media infringed any of the claims of the DDB patents.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

A patent may be infringed directly or indirectly. Direct infringement results if the accused infringer commits all acts necessary to infringe at least one claim of the patent either personally or through another party acting under the accused infringer's direction or control. Indirect infringement results if the accused infringer has knowledge of the patent, commits some of the acts necessary to infringe at least one claim of the patent, [had knowledge of the patent, and then knowingly induces another party to commit the remaining acts necessary to infringe that claim]

---

[10] FCBA B.2.3; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (claim construction of a patent, including claim terms, is exclusively within the province of the court); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("ordinary and customary meaning" is based on the understanding of a person of ordinary skill in the art in question at the time of the invention); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (claim construction is a question of law reviewed de novo); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (same); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (in jury cases, court has obligation to construe claim terms).

[intentionally induces another party to commit the remaining acts necessary to infringe that claim, and knows that those acts constitute infringement].[11]

## II.    DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL

In this case, DDB asserts that Fox Sports Interactive Media has directly infringed the DDB patents. Fox Sports Interactive Media would be liable for directly infringing the DDB patents if you find that DDB has proven that it is more likely than not that Fox Sports Interactive Media has used the invention defined in at least one claim of the DDB patents.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.[12]

## III.    DIRECT INFRINGEMENT – LITERAL INFRINGEMENT

One form of direct infringement is literal infringement. In order to prove literal infringement, DDB must prove that it is more likely than not that [the accused Fox Sports Interactive Media products literally meet all of the requirements of the claim] [Fox Sports Interactive Media performs each and every element of the asserted claims]. To determine literal infringement, you must compare each of the accused Fox Sports Interactive Media products with each claim that DDB asserts is infringed, using my instructions as to the meaning of the patent claims. If [the accused product does not contain] [Fox Sports Interactive Media does not

---

[11] AIPLA Model Jury Instructions ("AIPLA") (2008), Infringement Instruction 3.0 (*modified*); 35 U.S.C. § 271; *Move, Inc. v. Real Estate Alliance Ltd.*, 709 F.3d 1117, 1123 (Fed. Cir. 2013);*Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1305-1307, 1318 (Fed. Cir. 2012); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*,517 U.S. 370 (1996).

[12] AIPLA Model Jury Instructions (2008), Infringement Instruction 3.1 (*modified*); 35 U.S.C. § 271(a); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

perform] one or more steps recited in a claim, Fox Sports Interactive Media does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.

The accused Fox Sports Interactive Media products should be compared to the invention defined in each patent claim it is alleged to infringe, not to DDB's preferred embodiment of the invention described in the specification. The same feature of the accused Fox Sports Interactive Media product may satisfy more than one element of a claim.[13]

## IV.    DIRECT INFRINGEMENT – [ACTS OF MULTIPLE PARTIES MUST BE COMBINED TO MEET ALL CLAIM LIMITATIONS] [ MULTIPLE ALLEGED INFRINGERS]

[Direct infringement requires that a party perform or use every step of a claimed method. Where no single party performs all of the steps of a claimed method but more than one party performs every step of the method, the claim is directly infringed if one party has control over the entire method so that the steps are attributable to the controlling party. Mere arms-length cooperation between parties is insufficient to prove direct infringement.]

[OR]

[Where an accused infringer does not personally perform all of the steps of a claimed method, the accused infringer will still be liable for direct infringement if the remaining steps are performed by another party that is under the accused infringer's direction or control. While mere arms-length cooperation between parties is insufficient to prove direct infringement, an agency

---

[13] AIPLA Model Jury Instructions (2008), Infringement Instruction 3.2 (*modified*); The Federal Circuit Bar Association Model Patent Jury Instructions (2013), Infringement Instruction B.3.1a (*modified*); *BMC Resources v. Paymentech, L.P.,* 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.,* 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber,* 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1481-82 (Fed. Cir. 1984).

relationship, or some equivalent, between the accused infringer and the other party is sufficient to prove direct infringement.]

DDB alleges that Fox Sports Interactive Media and STATS collectively infringe the claims of the DDB patents.

For infringement to be proved, DDB must prove that it is more likely than not that for those steps not personally performed by Fox Sports Interactive Media, such steps are performed by STATS: (1) in the United States and (2) under the control or direction of Fox Sports Interactive Media.[14] If STATS has a license or other right to practice the DDB patents, you may not rely on any activities by STATS to prove infringement by Fox Sports Interactive Media.[15]

Fox Sports Interactive Media argues that STATS has a license to use the DDB patents and, therefore, DDB cannot rely upon activities of STATS to prove infringement by Fox Sports Interactive Media. Fox Sports Interactive Media must show that it is more probable than not that

---

[14] The Federal Circuit Bar Association Model Patent Jury Instructions (2013), Infringement Instruction B.3.7 (*modified*); *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1305-1307, 1318 (Fed. Cir. 2012); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir.2008); *BMC Resources Inc. v. Paymentech LP*, 498 F.3d 1373, 1378-81 (Fed. Cir. 2007); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005); *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309-11 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353-54 (Fed. Cir. 2001); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986).

[15] 35 U.S.C. § 271(a); *see Aro Mfg Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 497-98 (1964) ("With the restriction thus eliminated, it is clear that Aro cannot be liable for contributory infringement in connection with sales of replacement fabris made after July 21, 1955. After that date the Ford car owners had authority from the patentee—indeed, had a "license"—fully to use and repair the patented structures. Hence they did not commit direct infringement under § 271(a) when they had the fabrics replaced; hence Aro, in selling the replacement fabrics for this purpose, did not commit contributory infringement under § 271(c)."); *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1349 (Fed. Cir. 2003) ("Therefore, if Anton/Bauer's customers have an implied license to practice the patented combination, they cannot infringe the '204 patent, and PAG cannot be liable for either inducement of infringement or contributory infringement."); *Boynton v. Headwaters, Inc.*, 243 F. App'x 610, 613 (Fed. Cir. 2007) (unpublished).

STATS has a license to use the DDB patents for the steps that it is performing in the United States under the control or direction of Fox Sports Interactive Media.[16]

## V.    DIRECT INFRINGEMENT – THE DOCTRINE OF EQUIVALENTS[17]

[DDB contends that certain claim elements, if not met literally, are met equivalently. If you decide that Fox Sports Interactive Media does not perform these claim elements literally you must then decide whether Fox Sports Interactive Media performs those elements under what is called the doctrine of equivalents.]

[OR]

[If you decide that Fox Sports Interactive Media's accused products do not literally infringe an asserted patent claim, you must then decide whether that those products infringe the asserted claim under what is called the doctrine of equivalents.]

Under the doctrine of equivalents, if the accused infringer does not perform a particular claimed step identically, that accused infringer may still be liable for infringement if it performs that claimed step equivalently. If the accused infringer does not perform even one of the steps of the asserted claim identically or equivalently, then the accused infringer does not infringe. Thus, in making your decision under the doctrine of equivalents, you must look at each individual step of the asserted patent claim and decide whether the accused infringer performs that step either identically or equivalently.

---

[16] *Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1293 (Fed. Cir. 2007); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 924 (Fed.Cir.1984); *JVC Kenwood Corp. v. Arcsoft, Inc.*, 966 F. Supp. 2d 1003, 1008 (C.D. Cal. 2013).

[17] FSIM objects to the inclusion of this instruction. DDB only relies on the doctrine of equivalents with respect to the "computer simulation" claim limitations, and DDB is precluded from relying on the doctrine of equivalents with respect to that limitation under the doctrine of prosecution history estoppel. However, FSIM proposes an instruction on the doctrine of equivalents in the event that the Court disagrees.

A step performed by an accused infringer is equivalent to a claimed step if a person of ordinary skill in the field would think that the difference between the step performed by the accused infringer and the claimed step was insubstantial as of the time of the alleged infringement. One way to decide whether any difference between the step performed by the accused infringer and the claimed step is insubstantial is to consider whether, as of the time of the alleged infringement, the step of the accused infringer performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed step.

In deciding whether any difference between the step performed by the accused infringer and the claimed step is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability between the step performed by the accused infringer and the claimed step. The known interchangeability between the step performed by the accused infringer and the claimed step is not necessary to find infringement under the doctrine of equivalents. A single step performed by an accused product may satisfy more than one step of a claim.[18]

**[Note: Limitations on the doctrine of equivalents are for the Court to decide. However, a proposed jury instruction has been provided in the event that the Court wishes to receive an advisory verdict from the jury.]**

## VI.    LIMITATIONS ON DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

The prior art may preclude a finding of infringement under the doctrine of equivalents. I will explain what "prior art" is, but, generally speaking, "prior art" are things (often found in

---

[18] AIPLA Model Jury Instructions (2008), Infringement Instruction 3.11 (*modified*); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Hughes Aircraft Co. v. U.S.*, 140 F.3d 1470 (Fed. Cir. 1998) *Graver Tank & Mfg. Co, v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

references such as books, magazines, and other patents) that were already known or done before the invention. In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you. You may determine whether the prior art prevents a finding of infringement under the doctrine of equivalents using two different methods.

First, to determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular product that is accused of infringing a particular claim, you must determine what technology is in the "prior art" as well as what would have been obvious from the "prior art" to a person having an ordinary level of skill in the field of technology of the patent at the time of the invention.

If a prior art reference has the same allegedly "equivalent" features and meets all the other claim requirements, you must find that the claim has not been infringed. Similarly, if a person having ordinary skill in the field of technology would have found the claim requirements, including the allegedly "equivalent" features, to be obvious in light of a prior art reference, or a combination of prior art references, you must find that the claim has not been infringed.

Fox Sports Interactive Media has the burden of proving that this hypothetical claim was within the prior art at the time of the alleged infringement, by a preponderance of the evidence.

Alternatively, to determine whether the prior art precludes a finding of infringement under the doctrine of equivalents, you must first have in mind a "hypothetical claim" that would cover the accused, allegedly equivalent product literally. The hypothetical claim is exactly the same as the claim at issue, except that the unmet claim requirements are broadened so that they would literally be met by the accused product.

Once you have this equivalent "hypothetical claim" in mind, you must decide whether this hypothetical claim would have been invalid for either anticipation or obviousness. Fox

==Sports Interactive Media must come forward with prior art to challenge a hypothetical claim, but the burden of proving patentability of the hypothetical claim remains with DDB.== I will instruct you later on how to determine if a claim is invalid for anticipation or obviousness. You should use these same rules to determine whether or not the "hypothetical claim" would be invalid for anticipation or obviousness. If you determine that the "hypothetical claim" would have been invalid for anticipation or obviousness, then you must find that there is no infringement of this particular claim under the doctrine of equivalents.[19]

Fox Sports Interactive Media has also argued that DDB cannot assert infringement under the doctrine of equivalents due to statements that the patent applicants made to the PTO in order to get the claims allowed in the first place. You may not find that a product infringes a claim under the doctrine of equivalents if you find that, during the patent application process, the applicant for the patent distinguished an unmet requirement from the allegedly "equivalent" alternative aspect of that product.

Fox Sports Interactive Media has also argued that DDB cannot assert infringement under the doctrine of equivalents due to an amendment to the patent application leading to the DDB patents. You may not find that [==the alternative feature of the accused products is an equivalent to==] [==Fox Sports Interactive Media performing==] an unmet requirement of a claim [==under the doctrine of equivalents==] if that requirement was added to the claim by amendment during the prosecution of the applications that led to the issuance of the DDB patents unless certain factors are satisfied. Specifically, in order to find equivalents, you must first also find one or more of the following: (1) the amendment that is asserted by Fox Sports Interactive Media to limit the scope

---

[19] Adapted from FCBA 3.1d; *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324-25 (Fed. Cir. 2009); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380-81 (Fed. Cir. 2001); *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 676, 684 (Fed. Cir. 1990).

of the equivalents substituted a broader requirement for a narrower requirement or replaced a requirement of equal scope; (2) the reason for making this amendment was not related to patentability; (3) a person having ordinary skill in the field of technology of the patent at the time of the amendment would not have foreseen the potential substitution of the allegedly "equivalent" alternative for the unmet claim requirement; (4) the reason for the amendment is tangential or relates to some issue other than the assertion of equivalence at issue; or (5) some other reason, such as the shortcomings of language, prevented the applicant from using claim language that included the allegedly "equivalent" alternative. [If you find that at least one of these factors that I have identified for you is met, then you may find that the alternative feature of the accused product is an equivalent to an unmet requirement of the claim.] [You may not find that Fox Sports Interactive Media performs a step of an asserted claim by equivalents if that requirement was added to the claim by amendment during prosecution of the applications that led to the issuance of the patents unless you also find the existence of at least one of these factors that I have identified for you.]

You also may not determine that an alternative aspect of a product is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.[20]

## VII.    INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT

[An accused infringer may be held liable for induced infringement if the accused infringer performs some of the steps necessary to infringe at least one claim of the patent and

---

[20] FCBA 3.1d; *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004); *Move, Inc. v. Real Estate Alliance Ltd.*, 709 F.3d 1117, 1123 (Fed. Cir. 2013); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999).

then induces another party to perform the remaining steps necessary to infringe that claim. In order to prove that Fox Sports Interactive Media is liable for induced infringement, DDB must prove that it is more likely than not that (1) Fox Sports Interactive Media knew of the DDB Patents, (2) Fox Sports Interactive Media performed some of the steps necessary to infringe an asserted claim, (3) Fox Sports Interactive Media induced STATS to perform any remaining steps necessary to infringe the asserted claim, (4) STATS did in fact perform the remaining steps, and (5) Fox Sports Interactive Media knew, or was willfully blind to the fact, that its own acts, in combination with STATS acts, would lead to infringement of the claims of the DDB patents. For purposes of this analysis, as long as Fox Sports Interactive Media caused, urged, encouraged, or aided STATS in performing certain steps, you should find that Fox Sports Interactive Media "induced" STATS to perform that act. Inducement does not require a finding that STATS was under the direction or control of Fox Sports Interactive Media.]

[DDB alleges that Fox Sports Interactive Media is liable for infringement by actively inducing others to perform steps to infringe the asserted claims. Specifically, DDB alleges that Fox Sports Interactive Media actively induced STATS to perform some of the steps of the asserted claims. You must determine whether there has been active inducement on a claim-by-claim basis. To show induced infringement, DDB must prove by a preponderance of the evidence that all of the steps of the claims have been performed and that Fox Sports Interactive Media has actively and knowingly aided and abetted the performance of any steps by STATS. Fox Sports Interactive Media is liable for active inducement of a claim only if:

1.  Fox Sports Interactive Media took action during the time the patents were in force which encouraged acts by STATS;

2.  all of the steps of the asserted claim are performed, either by Fox Sports Interactive Media or STATS;

3.  Fox Sports Interactive Media (a) was aware of the patent and knew that its own acts and the encouraged acts constituted infringement of the patents; or (b) was willfully blind to the infringement of the patent. Willful blindness requires that the Fox Sports Interactive Media subjectively believed there was a high probability that its own acts and the encouraged acts constituted infringement of the patent and the Fox Sports Interactive Media took deliberate actions to avoid learning of the infringement;

4.  Fox Sports Interactive Media had the intent to encourage performance of acts by STATS that are necessary to infringe the asserted claims; and

5.  the encouraged acts were actually carried out by STATS.

In order to prove active inducement, DDB must prove each of the above requirements is met by a preponderance of the evidence, i.e., that it is more likely true than not that each of the above requirements has been met. In considering whether Fox Sports Interactive Media has induced infringement, you may consider all of the circumstances, including whether Fox Sports Interactive Media obtained the advice of a competent lawyer, whether or not Fox Sports Interactive Media had a good faith belief of non-infringement, and whether Fox Sports Interactive Media had a good faith belief of invalidity. In order to establish active inducement of infringement, it is not sufficient that Fox Sports Interactive Media was aware of the act(s) necessary to practice the asserted claims that are performed by a third-party. Rather, you must find that Fox Sports Interactive Media specifically intended to cause the acts performed by the third party and must have known or was willfully blind that the action would cause infringement.]

If you do not find that Fox Sports Interactive Media meets these specific intent requirements by a preponderance of the evidence, then you must find that Fox Sports Interactive

Media has not actively induced the alleged infringement.[21] In addition, if STATS has a license or other right to practice the DDB patents, then you may not find Fox Sports Interactive Media liable for induced infringement.[22]

Fox Sports Interactive Media argues that STATS has a license to use the DDB patents and, therefore, DDB cannot rely upon activities of STATS to prove infringement by Fox Sports Interactive Media. Fox Sports Interactive Media must show that it is more probable than not that STATS has a license to use the DDB patents for the steps that it is performing in the United States under the control or direction of Fox Sports Interactive Media.[23]

[Note: The objective prong of the test for willfulness is a legal issue for the Court to decide. However, an instruction on the objective prong is included in the willfulness instruction in the event the Court wishes to submit the issue to the jury for an advisory verdict.]

## VIII.  WILLFUL INFRINGEMENT

In this case, DDB argues both that Fox Sports Interactive Media infringed and, further, that Fox Sports Interactive Media infringed willfully. If you have decided that Fox Sports

---

[21] 35 U.S.C. § 271(b); Adapted from *VirnetX Inc. v. Apple, Inc.* (E.D. Tex. November 6, 2012), ECF No. 597; *Global-Tech Applicances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011); *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc); *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361 (Fed. Cir. 2013);*DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).

[22] *See Aro Mfg Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 497-98 (1964) ("With the restriction thus eliminated, it is clear that Aro cannot be liable for contributory infringement in connection with sales of replacement fabris made after July 21, 1955. After that date the Ford car owners had authority from the patentee—indeed, had a "license"—fully to use and repair the patented structures. Hence they did not commit direct infringement under § 271(a) when they had the fabrics replaced; hence Aro, in selling the replacement fabrics for this purpose, did not commit contributory infringement under § 271(c)."); *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1349 (Fed. Cir. 2003) ("Therefore, if Anton/Bauer's customers have an implied license to practice the patented combination, they cannot infringe the '204 patent, and PAG cannot be liable for either inducement of infringement or contributory infringement."); *Boynton v. Headwaters, Inc.*, 243 F. App'x 610, 613 (Fed. Cir. 2007) (unpublished).

[23] *Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1293 (Fed. Cir. 2007); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 924 (Fed.Cir.1984); *JVC Kenwood Corp. v. Arcsoft, Inc.*, 966 F. Supp. 2d 1003, 1008 (C.D. Cal. 2013).

Interactive Media has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine by clear and convincing evidence that Fox Sports Interactive Media acted objectively recklessly.

To prove that Fox Sports Interactive Media acted objectively recklessly, DDB must prove two things by clear and convincing evidence:

The first part of the test is objective: the patent holder must persuade you that Fox Sports Interactive Media acted despite a high likelihood that Fox Sports Interactive Media's actions infringed a valid and enforceable patent. In making this determination, you may not consider Fox Sports Interactive Media's state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.

Only if you conclude that the Fox Sports Interactive Media's conduct was objectively reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of the Fox Sports Interactive Media. DDB must persuade you that Fox Sports Interactive Media actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether Fox Sports Interactive Media had this state of mind, consider all facts which may include, but are not limited, to:

1. Whether or not Fox Sports Interactive Media acted in accordance with the standards of commerce for its industry;

2. Whether or not Fox Sports Interactive Media intentionally copied a product that is covered by the DDB patents;

3. Whether or not there is a reasonable basis to believe that Fox Sports Interactive Media did not infringe or had a reasonable defense to infringement;

4.   Whether or not Fox Sports Interactive Media made a good-faith effort to avoid infringing the DDB patents, for example, whether Fox Sports Interactive Media attempted to design around the DDB patents; and

5.   Whether or not Fox Sports Interactive Media tried to cover up its infringement.

Fox Sports Interactive Media argues it did not act recklessly because it relied on a legal opinion that advised Fox Sports Interactive Media that it did not infringe the DDB patents. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable. [24] In determining whether reliance on an opinion of counsel was reasonable, you should consider factors such as whether the opinion was timely obtained, whether the opinion contains sufficient internal indicia of credibility to remove any doubt that Fox Sports Interactive Media in fact received a competent opinion,[25] whether counsel analyzed all of the relevant facts, whether the opinion was conclusory in nature, whether the opinion was rendered by independent outside counsel, and whether the opinion was rendered by an experienced patent attorney.[26]

## INVALIDITY

I will now instruct you on the rules you must follow in deciding whether or not Fox Sports Interactive Media has proven that the claims of the DDB patents are invalid. Patent invalidity is a defense to patent infringement. Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the

---

[24] FCBA Infringement Instruction B.3.10 (*modified*); 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc) (opinion of counsel defense); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that may show willfulness); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) (history of Federal Circuit decisions on willfulness).

[25] *In re Hayes Microcomputer Products, Inc. Patent Litig.*, 982 F.2d 1527, 1543 (Fed. Cir. 1992).

[26] *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 743-44 (Fed. Cir. 1993); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828-29 (Fed. Cir. 1992); *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983).

patent are valid.[27] To prove that any claim of a patent is invalid, Fox Sports Interactive Media must persuade you by clear and convincing evidence, <mark>i.e., you must be left with a clear conviction that the claim is invalid</mark>.[28]

## I.    ANTICIPATION

The patent laws of the United States require that an invention must be new for a person to be entitled to a patent. Fox Sports Interactive Media asserts that the asserted claims are invalid because the claimed invention is not new, or it lacks novelty. Specifically, Fox Sports Interactive Media asserts that the claimed invention is anticipated by prior art.

In the following instructions, I will use the term "prior art" repeatedly. Prior art means technology and information that was publicly available before the date of invention. The United States patent laws identify the circumstances in which a person is not entitled to a patent because the elements of the claimed invention were previously disclosed by prior art. The specific categories of prior art that are relevant for purposes of this case include:

1.  Anything that was publicly known or used by others in the United States before the date of the invention.

2.  Anything that was patented or described in a printed publication anywhere in the world before the date of invention.

---

[27] Model Patent Jury Instructions of the National Jury Instruction Project (2009).

[28] FCBA 4.1; 35 U.S.C. § 282 (patents presumed valid); *Microsoft Corp. v. i4i Limited Partnerhsip*, 131 S.Ct. 2238 (2011); *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present clear and convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration in original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the presumption remains intact and on the challenger throughout the litigation, and the clear and convincing standard does not change.").

3. Anything that was described in a patent granted on an application for patent by another filed in the United States and the application was filed before the date of invention.

4. Anything that was already patented or described in a printed publication, anywhere in the world, more than a year before [the effective filing date] [July 29, 1992]. An invention was patented by another if the other patent describes the same invention claimed by DDB to a person having ordinary skill in the technology.

5. Anything that was publicly used, sold, or offered for sale in the United States more than one year before [the effective filing date] [July 29, 1992]. An invention was publicly used when it was either accessible to the public or commercially exploited.[29]

[I will instruct you later on the effective filing date.] [You are instructed that date of invention in this case is July 29, 1992, which is also the earliest effective filing date to which the DDB patents can claim priority.][30]

To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular prior art reference.

---

[29] Adapted from Jury Instructions, at 20-21, *W. Union Co. v. Moneygram Int'l, Inc.*, Case No. 1:07-cv-372-SS (W.D. Tex., Sept. 23, 2009), ECF No. 389 and FCBA 4.3; 35 U.S.C. §§ 102(a), (b), (e).

[30] *See* U.S. Pat. No. 5,526,479.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior invention, but also what inherently resulted from its practice. This is called "inherency." Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art and if a skilled person would understand that to be the case. A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the prior art necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application as filed. It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.[31]

When a party challenging the validity of a patent relies on prior art that was considered by the Examiner during the prosecution of the application which resulted in the issued patent, that party's ability to satisfy its clear and convincing evidence burden may be more difficult. When a party challenging the validity of a patent presents evidence that was not considered by the Examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy that party's clear and convincing evidence burden.[32]

---

[31] AIPLA 6.0; *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-1321 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-1378 (Fed. Cir. 2003); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1347-1348 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992); *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267-1269 (Fed. Cir. 1991); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988).

[32] AIPLA 5.1; *Microsoft Corp. v. i4i Ltd. P'ship.*, 564 U.S. __, 131 S. Ct. 2238, 2251 (2011); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-56 (Fed. Cir. 2000); *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1306 (Fed. Cir. 2005).

In this case, you must determine the date of invention of the claimed invention. The date of invention is either when the invention was reduced to practice or when conceived, provided that the inventors were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day.

Conception is the mental part of an inventive act, *i.e.*, the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.

This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. The patentee must show evidence that it possessed every feature recited in the claims, and that every limitation of the claims was known to the inventor at the time of the alleged conception.[33] In this case, DDB must provide corroborating evidence contemporaneous with its date of conception that describes the invention with particularity.[34] Corroborating evidence may take many forms, such as: contemporaneous documents prepared by the inventor; circumstantial evidence about

---

[33] *See Hitzeman v. Rutter*, 243 F. 3d 1345, 1354 (Fed. Cir. 2001).

[34] *See Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

the inventive process contemporaneous with the date of conception; and oral testimony of someone other than the alleged inventor.[35] DDB bears the burden of coming forward with evidence that corroborates the inventors' testimony that the invention was conceived prior to [DDB's earliest priority date] [July 29, 1992].

A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.[36][37]

## II.    OBVIOUSNESS

Fox Sports Interactive Media also contends that the asserted claims of the asserted patents are invalid because the claimed invention is "obvious."

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.[38] A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was

---

[35] *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998).

[36] Adapted from FCBA 4.3a; *Dawson v. Dawson*, 710 F.3d 1347, 1352 (Fed. Cir. 2013); *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1331-32 (Fed. Cir. 2001) *Ethicon, Inc. v. U.S. Surgical Corp;*, 135 F.3d 1456, *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-78 (Fed. Cir. 1996); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986).

[37] The parties propose this instruction regarding conception and reduction to practice in the event that the Court declines to instruct the jury that the date of invention is a specific date, as requested above. If the Court instructs the jury that the date of invention is specific date, then an instruction regarding conception and reduction to practice is unnecessary.

[38] FCBA 4.3(c).

made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field that someone would have had on [the effective filing] [July 29, 1992], the scope and content of the prior art, and any differences between the prior art and the claimed invention.[39] In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today. You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

The following factors must be evaluated to determine whether Fox Sports Interactive Media has established that the claimed invention is obvious:

1.  the scope and content of the prior art relied upon by Fox Sports Interactive Media;

2.  the difference or differences, if any, between each claim of the asserted patents and the prior art;

3.  the level of ordinary skill in the art at the time the invention of the DDB patents was made; and

4.  additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.[40]

---

[39] FCBA 4.3(c).

[40] AIPLA 7.0; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Otsuka Pharmaceutical Co., Ltd. v. Sandoz, Inc.,* 678 F.3d 1280, 1296 (Fed. Cir. 2012); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic*

Fox Sports Interactive Media must prove obviousness by clear and convincing evidence. Again, when a party challenging the validity of a patent relies on prior art that was considered by the Examiner during the prosecution of the application which resulted in the issued patent, that party's ability to satisfy its clear and convincing evidence burden may be more difficult. When a party challenging the validity of a patent presents evidence that was <u>not</u> considered by the Examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy that party's highly probable evidence burden.[41] I will now explain each of the four factors in more detail.

### A.      Scope and Content of Prior Art

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

### B.      Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the

---

*Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

[41] Adapted from AIPLA 5.1; *Microsoft Corp. v. i4i Ltd. P'ship.,* 564 U.S. __, 131 S. Ct. 2238, 2251 (2011); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,* 225 F.3d 1349, 1355-56 (Fed. Cir. 2000); *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1306 (Fed. Cir. 2005).

invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. If you find that it was commonplace at the time of the invention to apply modern electronics, computer, internet, or web technology to older mechanical or electrical devices, and that the combination of this modern technology with the older devices would have yielded the claimed invention, you should find that the asserted claims are obvious.[42]

On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense. You may also consider whether the problem or need was known, the possible approaches to solving the

---

[42] *Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333, 1340, 1344 (Fed. Cir. 2013); *W. Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1369 (Fed. Cir. 2010); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1326-27 (Fed. Cir. 2008); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007).

problem or addressing the need were known and finite, and the solution was predictable through use of a known option.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious. Again, you must undertake this analysis separately for each claim that Fox Sports Interactive Media contends is obvious.[43]

### C.    Level of Ordinary Skill

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the field of the technology of the patent. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.   the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

2.   the types of problems encountered in the art at the time of the invention; and

---

[43] Adapted from AIPLA 7.2; *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

3. the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.[44]

Fox Sports Interactive Media contends that a person of ordinary skill in the art would have at least a Bachelor's degree or equivalent experience in computer science, electrical engineering, or a related field. This person would also have at least 3-5 years of experience with the analysis and programming of client-server applications and computer networking technology, including knowledge of various programming languages required for the implementation of such systems, and knowledge of distributed computer architectures.

DDB contends that a person of ordinary skill in the art for purposes of this case is a person having (1) a bachelor degree in computer science, software engineering, electrical engineering, or the equivalent, and (2) several years of experience in the application of at least one of these disciplines.

### D. Factors Indicating Nonobviousness

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1. Commercial success of a product due to the merits of the claimed invention.

2. A long felt need for the solution provided by the claimed invention.

---

[44] AIPLA 7.3; *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696-97 (Fed. Cir. 1983).

3.  Unsuccessful attempts by others to find the solution provided by the claimed invention.

4.  Copying of the claimed invention by others.

5.  Unexpected and superior results from the claimed invention.

6.  Acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention.

7.  Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention.[45]

8.  Other evidence tending to show nonobviousness.

9.  Independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

10. Other evidence tending to show obviousness.

The presence of factors 1-8 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention as made, and the presence of factors 9 and 10 may be considered by you as an indication that the claimed invention would have been obvious at the time the claimed invention was made. Although you should consider any evidence of these factors, the relevance and importance of them to your decision on whether the claimed invention would have been obvious is up to you.[46]

---

[45] FCBA 4.3(c).

[46] Adapted from AIPLA 7.4 and Northern District of California Model Patent Jury Instructions 4.3b; *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *United States v. Adams*, 383 U.S. 39, 52 (1966); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

[Note: Obviousness-type double patenting is an issue of law for the Court to decide. However, a proposed jury instruction has been provided in the event that the Court wishes to receive an advisory verdict from the jury.]

[Note: On May 15, 2014, this Court ordered that DDB is not entitled to pursue infringement under the '479 patent after June 25, 2010, which was the expiration date of the '347, '862, and '587 Patents. Under this ruling, the '479 patent no longer expires later than the '347, '862, and '587 Patents, which is a fundamental basis for Fox Sports Interactive Media's double-patenting defense. Thus, DDB respectfully submits that in view of the Court's ruling, obviousness-type double-patenting is no longer an issue in this case and a jury instruction on this issue is unnecessary.]

III.     **OBVIOUSNESS-TYPE DOUBLE PATENTING**

In this case, FSIM also contends that the asserted claims of the '479 Patent are invalid in view of the claims of the '347, '862, and '587 Patents under a doctrine known as obviousness-type double patenting. The '347, '862, and '587 Patents may invalidate the claims of the '479 Patent because those patents expire earlier than the '479 Patent.

The claims of the '479 Patent are invalid for obviousness-type double patenting if the claims of the '479 Patent are not patentably distinct from the claims of the '347, '862, or '587 Patents. Determining whether claims are patentably distinct requires a two-step inquiry. First, the claims must be construed and the differences between the claims in the patents must be determined. I have already construed the claims in this case. You should use those constructions in determining whether the claims of the '479 Patent are invalid for obviousness-type double patenting. Once you have determined the differences between the claims of the '479 Patent and the claims of the '347, '862, and '587 Patents, you should then determine whether those

differences render the claims patentably distinct. A claim in the '479 Patent is not patentably distinct from a claim in the '347, '862, or '587 Patent if the claim in the '479 Patent is obvious over or anticipated by a claim in the '347, '862, or '587 Patent. If a claim in the '347, '862, or '587 Patent is merely a narrower version of a claim in the '479 Patent, then you should find the claim of the '479 Patent invalid under the doctrine of obviousness-type double patenting.[47]

## IV.    IMPROPER INVENTORSHIP

In this case, Fox Sports Interactive Media contends that the DDB patents are invalid because of improper inventorship. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the inventorship requirement.

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent, even if that claim has not been alleged to be infringed. Whether the contribution is significant is measured against the full scope of the invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they

---

[47] *Gilead Scis., Inc. v. Natco Pharma Ltd.*, No. 2013-1418, 2014 WL 1584450 (Fed. Cir. Apr. 22, 2014); *Sun Pharmas. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1384-85 (Fed. Cir. 2010); *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967-72 (Fed. Cir. 2001).

must have some open line of communication during or at approximately the time of their inventive effort.[48]

## V.     DETERMINATION OF THE EFFECTIVE FILING DATE—ACQUIESCENCE

**[Note: Acquiescence is an issue of law for the Court to decide based on underlying facts. However, a proposed jury instruction has been provided in the event that the Court wishes to receive an advisory verdict from the jury.]**

DDB contends that the asserted patents are entitled to an effective filing date of June 25, 1990, which is the date of filing of U.S. Patent Application No. 07/542,990. I will refer to this application as the '990 Application. The '479 patent is a continuation-in-part of the '990 application.

[In order to claim priority to the filing date of a parent application, the] [The] patent laws require that [the parent application] [a patent] contain a written description of the invention in such a way as to enable a person skilled in the art to carry out the invention.[49]

A continuation-in-part can be entitled to different effective filing dates for different claims depending on whether the parent application adequately describes what is claimed. Claims containing any matter introduced in the continuation-in-part are entitled only to the filing date of the continuation-in-part application. However, claims containing only matter that is disclosed in the parent application are entitled to the effective filing date of the parent application.[50]

---

[48] FCBA 4.3d; 35 U.S.C. §§ 102, 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997) (applying "clear and convincing evidence" standard to inventorship claims and finding plaintiff who offered suggestions to \named inventors was not an inventor); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

[49] 35 U.S.C. § 112 ¶ 1.

[50] *Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556, 558-59 (Fed Cir. 1994).

In this case, Fox Sports Interactive Media contends that DDB is not entitled to claim an effective filing date of June 25, 1990, because the patent examiner issued a final rejection in the '990 Application for failure to adequately disclose certain features. Instead of appealing the examiner's rejection, the patent applicants abandoned the '990 Application and filed a new application. Fox Sports Interactive Media contends that by abandoning '990 Application, the patent applicants [allegedly] acquiesced to the patent examiner's rejection of the claims in the '990 Application for lack of [an adequate disclosure] [enablement].

If the patent applicants did acquiesce in the patent examiner's rejection for lack of an adequate disclosure, then DDB may not claim the filing date of the '990 Application as the effective filing date of the DDB patents. You should find that the patent applicants acquiesced if the patent examiner rejected the claims of the '990 application because the application did not adequately disclose the invention, that rejection was an explicit final rejection, the applicant chose not to appeal the examiner's rejection and abandoned the '990 application, and the applicant then filed a continuation-in-part application.[51]

The filing of a continuation-in-part application to overcome an examiner's rejection does not give rise to an irrebuttable presumption of acquiescence in the rejection. Fox Sports Interactive Media, as the party challenging the validity, bears the burden of proving by clear and convincing evidence that DDB's filing of the application leading to the '479 patent constituted an acquiescence of the examiner's enablement rejection. This burden of proof remains on Fox Sports Interactive Media throughout the trial. If you find that the filing of the application leading to the '479 patent gives rise to a presumption of acquiescence, DDB may rebut this presumption

---

[51] *Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556, 558-59 (Fed Cir. 1994); *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1436-40.

with countervailing evidence showing that it did not acquiesce in the examiner's rejection.[52] After considering this evidence, if you ultimately find that Fox Sports Interactive Media has proven by clear and convincing evidence that the applicants acquiesced in the patent examiner's final rejection for lack of enablement, then DDB may not claim the filing date of the '990 Application as the effective filing date of the DDB patents.

**[Note: Whether the claims find adequate written support in a parent application is a factual issue. Enablement is a question of law based on underlying facts.]**

If Fox Sports Interactive Media does not establish that DDB acquiesced to the examiner's enablement rejection of the '990 application, then you must determine whether the '990 Application contained a sufficient written description of the claimed invention and whether that written description would enable a person of skill in the art to make and use the invention. If you determine that the '990 Application met both of these requirements, then DDB will be entitled to an effective filing date of June 25, 1990. Alternatively, if you determine that the '990 Application did not meet one or both of these requirements, then DDB will be entitled to an effective filing date of July 29, 1992.

In making your determination, keep in mind that if Fox Sports Interactive Media introduces prior art that is dated earlier than July 29, 1992, but after June 25, 1990, then DDB must come forward with evidence and argument that it is entitled to an effective filing date of June 25, 1990. However, Fox Sports Interactive Media still bears the burden of proving by clear and convincing evidence that the '990 Application did not meet the written description and enablement requirements for the asserted claims.

---

[52] *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1578-79 (Fed. Cir. 1984)

In deciding whether the '990 Application satisfies the written description requirement for the asserted claims, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the '990 Application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the '479, '347, '862 and '587 patents and that the inventor actually possessed that full scope on June 25, 1990, which is the filing date of the '990 Application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.[53]

In deciding whether the '990 Application enables one of skill in the art to use the claimed invention, you must determine whether the description in the '990 Application is a sufficiently full and clear description of the claimed invention. To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of the technology of the patent to make and use the full scope of the claimed invention at the time the '990 Application was filed without having to conduct undue experimentation.

---

[53] FCBA B.4.2; 35 U.S.C. § 112, ¶¶ 1, 2; *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc); *Tech. Licensing Corp. v. Videotex, Inc.*, 545 F.3d 1316, 1328-29 (Fed. Cir. 2008); *Lizard Tech., Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 285 F.3d 1013, 1020-21 (Fed. Cir. 2002); *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (patent's specification must include an adequate written description; however, it need not include the exact words of the claim); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1.  the time and cost of any necessary experimentation;

2.  how routine any necessary experimentation is in the field of technology;

3.  whether the '990 Application discloses specific working examples of the claimed invention;

4.  the amount of guidance presented in the '990 Application;

5.  the nature and predictability of the field of the technology;

6.  the level of ordinary skill in the field of technology; and

7.  the scope of the claimed invention.

Not one of these factors alone is dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the '990 Application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.[54]

In deciding whether the '990 Application satisfies the written description and enablement requirements for the asserted claims, you must also keep in mind that the '990 Application need

---

[54] Adapted from FCBA 4.2; 35 U.S.C. § 112, ¶ 1; *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("'The scope of the claims must be less than or equal to the scope of the enablement' to 'ensure[ ] that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims.'") (quoting *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999)); *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1285 (Fed. Cir. 2007) (full scope of claimed invention must be enabled); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (enabling the full scope of each claim is "part of the quid pro quo of the patent bargain"); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (factors for determining undue experimentation).

==not disclose, and preferably omits, that which is well-known to those skill in the art and already== ==available to the public.[55]==

**[Note: Inequitable conduct is an equitable issue for the Court to decide. However, a proposed jury instruction has been provided in the event that the Court wishes to receive an advisory verdict from the jury.]**

## INEQUITABLE CONDUCT

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office. The duty of candor and good faith requires that every individual associated with the filing and prosecution of a patent disclose all information that the individual known to be material to patentability.[56] This is important because the PTO has limited resources. When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with an intent to deceive the PTO, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness. This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.[57]

Fox Sports Interactive Media contends that DDB may not enforce the DDB patents against Fox Sports Interactive Media because individuals substantively involved in the

---

[55] *In re Buchner,* 929 F.2d 660, 661 (Fed. Cir. 1991); *Hybritech, Inc.v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1384 (Fed. Cir. 1986), *cert. denied,* 480 U.S. 947 (1987); *Lindemann Maschinenfabrik GMBHv. American Hoist & Derrick Co.,* 730 F.2d 1452, 1463 (Fed. Cir. 1984).

[56] 37 C.F.R. § 1.56(a); *Avid Identification Sys., Inc. v. Crystal Import Corp.,* 603 F.3d 967, 973 (Fed. Cir. 2010).

[57] FCBA 5.1.

prosecution of the DDB patents engaged in inequitable conduct before the Patent and Trademark Office during prosecution of that patent.

Fox Sports Interactive Media must prove inequitable conduct by clear and convincing evidence. To determine whether the DDB patents were obtained through inequitable conduct, you must determine (1) whether an individual or individuals having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and (2) that this individual or individuals acted with the specific intent to deceive or mislead the Patent and Trademark Office. [58]

### A.    Materiality

If you find that an individual having this duty of good faith and candor withheld information when applying for the DDB patents, you must determine whether that information was material information.

Information is material if "but for" the individual's failure to disclose the information during the prosecution, the Patent and Trademark Office would not have allowed one or more claims of the DDB patents. In other words, information is material if it is more likely than not that the Patent and Trademark office would not have allowed one or more claims of the DDB patents if it had been aware of the withheld information. To decide whether the Patent and Trademark Office would not have allowed one or more claims if it had been aware of the withheld information, you should use the broadest reasonable interpretation of the claim or claims under consideration and apply the more likely than not standard, as the Patent and Trademark Office would have done.

---

[58] AIPLA 10.1; *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc); *Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967, 973-74 (Fed. Cir. 2010); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007); *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006); *Purdue Pharma L.P. v. Endo Pharm., Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003).

If you decide that the Patent and Trademark Office would not have allowed one or more claims applying this standard, then the individual's failure to disclose the information during the prosecution is material, whether or not you also find the claims invalid under the standards for finding claims invalid in this lawsuit. This does not change Fox Sports Interactive Media's overall burden, however, to prove its inequitable conduct defense by clear and convincing evidence.[59]

### B.      Intent to Deceive

If you determine that material information was withheld from or misrepresented to the Patent and Trademark Office, you must next determine whether this was done with a specific intent to deceive or mislead the Patent and Trademark Office. Intent to deceive the Patent and Trademark Office may be found from direct evidence. You may also infer deceptive intent from the facts and surrounding circumstances. For example, when a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be to deceive the Patent and Trademark Office, an inference of intent to deceive the Patent and Trademark Office may be appropriate.

When the individual having a duty of good faith and candor has deliberately withheld or misrepresented known material information from the Patent and Trademark Office, you may find that he or she acted with intent to deceive the Patent and Trademark Office if and only if that is the single most reasonable inference to be drawn from the evidence. In order to find intent to deceive, you need to determine that the individual knew of the withheld or misrepresented information, knew the information was material, and made a deliberate and conscious decision to withhold or misrepresent the information. In determining whether there was an intent to deceive

---

[59] AIPLA 10.2; *Therasense, Inc. v. Becton Dickinson & Co.,* 649 F.3d 1276 (Fed. Cir. 2011) (en banc).

or mislead the Patent and Trademark Office, you should consider the totality of the circumstances, including the nature of the conduct and whether that conduct occurred in good faith.[60]

**[Note: Laches is an equitable issue for the Court to decide. However, a proposed jury instruction has been provided in the event that the Court wishes to receive an advisory verdict from the jury.]**

## <u>LACHES</u>

Fox Sports Interactive Media contends that DDB is not entitled to recover damages for acts that occurred before it filed this lawsuit because: (1) DDB delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) Fox Sports Interactive Media has been or will be prejudiced in a significant way to due to DDB's delay in filing the lawsuit. This is referred to as laches. Fox Sports Interactive Media must prove delay and prejudice by a preponderance of the evidence.

If suit was delayed for six years, a presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. The presumption shifts the burden of proof to DDB to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if DDB presents such evidence, the burden of proving laches remains with Fox Sports Interactive Media. Laches may also be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to Fox Sports Interactive Media. Whether DDB's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during

---

[60] AIPLA 10.3; *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011)(en banc); *Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340-41 (Fed. Cir. 2009); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366, 1368 (Fed. Cir. 2008); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1137-38 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F. 3d 1123, 1133-34 (Fed. Cir. 2006); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319-20 (Fed. Cir. 2000); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180-82 (Fed. Cir. 1995).

the period of delay. There is no minimum amount of delay required to establish laches. Facts and

circumstances that can justify a long delay can include:

1. being involved in negotiations with Fox Sports Interactive Media during the
   period of delay;

2. poverty or illness during the period of delay;

3. being involved in a dispute about ownership of the patent during the period of
   delay; or

4. minimal amounts of allegedly infringing activity by Fox Sports Interactive Media
   during the period of delay.

5. being involved in other litigation during the period of delay;

Other litigation by itself is not necessarily an adequate excuse for delay in filing suit.

However, you may consider whether DDB in fact notified Fox Sports Interactive Media that it

was engaged in other litigation during the delay and whether it notified Fox Sports Interactive

Media that it intended to sue Fox Sports Interactive Media after concluding its other litigation.[61]

In light of DDB's prior communications with Fox Sports Interactive Media, you may assume

that such a notice was required by DDB to Fox Sports Interactive Media.[62]

If DDB fails to show a legally-recognized excuse for its delay, or if DDB fails to provide

any evidence that Fox Sports Interactive Media did not suffer prejudice, then you must presume

---

[61] *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) ("[T]here can be no rigid requirement in judging a laches defense that such notice *must* be given. If a defendant is, for example, aware of the litigation from other sources, it would place form over substance to require a specific notice. . . . Where there is prior contact, the overall equities may require appropriate notice, as in *Jamesbury*. However, a notice requirement is not to be rigidly imposed as the district court did in this case.").

[62] *Id.*

that DDB's delay was unreasonable and that Fox Sports Interactive Media suffered material prejudice because of DDB's delay in bringing this lawsuit.[63]

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if Fox Sports Interactive Media suffered material prejudice as a result of the delay. Prejudice to Fox Sports Interactive Media can be evidentiary or economic. Whether Fox Sports Interactive Media suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in Fox Sports Interactive Media not being able to present a full and fair defense on the merits to DDB's infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to loss of important records, the death or impairment of an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not Fox Sports Interactive Media changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if Fox Sports Interactive Media could have switched to a noninfringing product if sued earlier), and also whether Fox Sports Interactive Media's losses as a result of that change in economic position likely would have been avoided if DDB had filed this lawsuit sooner. In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice). You

---

[63] *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1544 (Fed. Cir. 1996) ("Importantly, where the patentee fails to meet this burden of production by coming forward with either affirmative evidence of a lack of prejudice or a legally cognizable excuse for its delay in filing suit, the two facts of unreasonable delay and prejudice 'must be inferred.'").

may also find that even though all of the elements of laches have been proved, it should not, in

fairness, apply, given all the facts and circumstances in this case.[64]

**[Note: Equitable estoppel is an equitable issue for the Court to decide. However, a
proposed jury instruction has been provided in the event that the Court wishes to receive
an advisory verdict from the jury.]**

## EQUITABLE ESTOPPEL

The owner of a patent may forfeit its right to any relief from an alleged infringer where:

(1) the patent holder communicates something in a misleading way to the allegedly infringing

party about the lack of infringement or about not being sued, (2) the alleged infringer relies upon

the misleading communication from the patent holder, and (3) the alleged infringer will be

materially harmed if the patent holder is allowed to assert a claim relating to the issue that is

inconsistent with the patent holder's prior misleading communication. This is referred to as

"equitable estoppel" and it is a defense that Fox Sports Interactive Media contends precludes any

recovery by DDB in this lawsuit. Fox Sports Interactive Media must prove each of these

elements by a preponderance of the evidence, but even if all these elements are proven, equitable

estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

Fox Sports Interactive Media contends that DDB made a misleading communication

about its intent to sue Fox Sports Interactive Media for patent infringement by failing to sue Fox

Sports Interactive Media from 2003 until it filed this lawsuit in 2011 and otherwise not

contacting Fox Sports Interactive Media from 2004 until it filed this lawsuit in 2011. A

communication may be made through written or spoken words, conduct, silence, or a

combination of words, conduct, or silence. Conduct may include action or inaction. Whether in

fact DDB communicated with Fox Sports Interactive Media about its intent to sue Fox Sports

---

[64] FCBA 5.2; 35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773-74 (Fed. Cir. 1995);
*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992)banc).

Interactive Media for patent infringement prior to the filing of this lawsuit, and whether that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to Fox Sports Interactive Media can be evidentiary or economic in form. Whether Fox Sports Interactive Media suffered evidentiary harm is a question that must be answered by evaluating whether Fox Sports Interactive Media will be unable to present a full and fair defense on the merits of DDB's claims. Not being able to present a full and fair defense on the merits of DDB's claims can occur due to the loss of important records, the death or impairment of important witnesses, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Whether Fox Sports Interactive Media suffered economic prejudice is a question that must be answered by evaluating whether Fox Sports Interactive Media changed its economic position as a result of its reliance on any misleading communication from DDB about its intent to sue Fox Sports Interactive Media for patent infringement, resulting in losses beyond merely paying for infringement (such as if Fox Sports Interactive Media could have switched to a noninfringing product if sued earlier) and whether losses as a result of any change in economic position could have been avoided.[65]

## EXHAUSTION

Fox Sports Interactive Media also contends that DDB cannot recover damages for a portion of Fox Sports Interactive Media's GameTrax products because DDB has exhausted its patent rights. Specifically, Fox Sports Interactive Media asserts that its NFL GameTrax products are covered by DDB's license to the NFL. In order to prevail on its defense of patent exhaustion

---

[65] FCBA 5.3; 35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) (to establish equitable estoppel, one must show reliance on patentee's misleading conduct); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc).

with respect to its NFL GameTrax products, Fox Sports Interactive Media must prove by a preponderance of the evidence that:

1.  The NFL was authorized to sell live-event data feeds describing plays in NFL football games under the terms of a license agreement between DDB and the NFL;

2.  STATS receives the NFL licensed feed, and that STATS directly transmits that feed to Fox Sports Interactive Media; and

3.  The live event data feeds received from STATS substantially embody the claims of the DDB Patents.

If you find that the DDB has authorized the sale of live-event data feeds to STATS, that STATS directly transmits the live-event data feeds to Fox Sports Interactive Media, and the live-event data feeds substantially embody the claims of the DDB Patents, then you must find for Fox Sports Interactive Media on its exhaustion defense.[66] If Fox Sports Interactive Media does not prove these three elements, you must reject Fox Sports Interactive Media's affirmative exhaustion defense.

## DAMAGES

### I.       DAMAGES – INTRODUCTION

If you find that Fox Sports Interactive Media infringed any valid claim of the DDB patents, you must then consider what amount of damages to award DDB. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

---

[66] *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008); *United States v. Univis Lens Co.*, 316 U.S. 241, 248-52 (1942); *Transcore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1274-77 (Fed. Cir. 2009).

The damages you award must be adequate to compensate DDB for the infringement but in no event less than a reasonable royalty. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put DDB in approximately the same financial position that it would have been in had the infringement not occurred.

DDB has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that DDB establishes that it more likely than not suffered.

There are different types of damages that a patent owner may be entitled to recover. In this case, DDB seeks a reasonable royalty. A reasonable royalty is defined as the money amount DDB and Fox Sports Interactive Media would have agreed upon as a fee for use of the invention at the time prior to when infringement began.[67]

## II.    DAMAGES – REASONABLE ROYALTY – DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make use or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The

---

[67] FCBA, Patent Damages Instruction B.6.1 (*modified*); 35 U.S.C. §284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 11370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)(*en banc*); *Lam Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.[68]

## III.   DAMAGES – REASONABLE ROYALTY – RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patents-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

---

[68] FCBA, Patent Damages Instruction B.6.6; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010)(*per curiam*); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) *cert. denied*, 130 S. Ct. 3324 (2010); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)(*en banc*); *Georgia-Pacific Corp. v. U.S. Plywood Corp.* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

(4)    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)    The duration of the patent and the term of the license.

(8)    The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as DDB) and a licensee (such as Fox Sports Interactive Media) would have agreed upon (at the time infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.[69]

## IV.    DATE OF COMMENCEMENT OF DAMAGES

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that Fox Sports Interactive Media has both infringed and been notified of the alleged infringement of the DDB patents.

You must determine the date Fox Sports Interactive Media received actual notice of the DDB patents and the specific products alleged to infringe. Actual notice means that DDB communicated to Fox Sports Interactive Media a specific charge of infringement of the DDB patents by a specific accused product. The filing of the complaint in this case qualifies as actual notice, so the damages period begins no later than October 27, 2011. However, DDB claims to have provided actual notice prior to the filing of the complaint, in September 2003. DDB has the burden of establishing that it is more probable than not Fox Sports Interactive Media received notice of infringement on September 2003.

---

[69] FCBA, Patent Damages Instruction B.6.7; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010)(*per curiam*); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) *cert. denied*, 130 S. Ct. 3324 (2010); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)(*en banc*); *Georgia-Pacific Corp. v. U.S. Plywood Corp.* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999).

If you find that the date of actual notice was prior to October 27, 2005, then you should treat October 27, 2005 as the beginning of the damages period. If you find that the date of actual notice was after October 27, 2005, then you should treat the date of actual notice as the beginning of the damages period.[70] [The damages period ends on June 25, 2010].

## CLOSING INSTRUCTIONS

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently or merely to finish the case.

Do not let bias, prejudice, or sympathy play any part in your deliberations. Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case. If there is publicity about this trial, you must ignore it. Do not read anything or listen to any TV or radio programs about the case.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, Linkedln, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

---

[70] FCBA, Patent Damages Instruction B.6.8; 35 U.S.C. §§286, 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

This concludes my instructions on the law in this case. You will now hear the lawyers' closing arguments. You will then retire to the jury room to deliberate on your verdict. You may take this charge with you as well as any exhibits which the court has admitted into evidence. You should first select a Presiding Juror or Foreman and then begin your deliberations. If you recess during your deliberations, you must follow the instructions the court has previously given concerning your conduct during the trial. Your duty is to fill in the form answering the jury questions to reflect your unanimous verdict. Your Presiding Juror must then sign the form. Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the lawyers your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.