**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JUN 1 1 2014

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| DDB TECHNOLOGIES, L.L.C., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-11-CV-929-LY |
| | § | |
| FOX SPORTS INTERACTIVE | § | |
| MEDIA, LLC, | § | |
| DEFENDANT. | § | |

## JURY CHARGE

## I. GENERAL INSTRUCTIONS FOR THE JURY

## MEMBERS OF THE JURY:

You have heard the evidence in this case and in a moment you will hear the arguments of the lawyers for the parties, but first I will instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the lawyers will have an opportunity to make their closing arguments. Statements and arguments of the lawyers are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

You will be given questions to answer concerning the issues in this case. Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

## A. CONSIDERATION OF THE EVIDENCE

You must consider only the evidence in this case.  However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

There are two types of evidence you may consider.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts.  The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from the evidence, both direct and circumstantial.

In determining whether any fact has been proved in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.  The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

You are the sole judges of the credibility or believability of each witness and the weight to be given the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses who testified in this case.  You should decide whether you believe what each person had to say and how important that testimony was.  In making that decision and in determining the weight to give to the testimony of a witness, I suggest you ask yourself a few questions:  Did the person impress you as honest?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome of the case?  Did the

2

witness have any relationship with any party to the case?  Did the witness have a good memory?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  These are a few considerations that may help you determine the accuracy of what each witness said.

### B. EVIDENCE IN THE CASE

If a lawyer asked a witness a question that contained an assertion of fact, you may not consider the lawyer's assertion as evidence of that fact.  The lawyers' statements are not evidence. When, however, the lawyers on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard the fact as proved.

Unless you are otherwise instructed, the evidence in this case always consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted or stipulated.

Any evidence as to which an objection was sustained by the court, any evidence ordered struck by the court, and any testimony, exhibit, or conduct that the court has instructed you to disregard must not be considered by you and must not be used for any purpose in reaching your verdict.

### C. EVIDENCE FOR A LIMITED PURPOSE

During the course of this trial I may have instructed you that I admitted certain evidence for a limited purpose or that you may consider some testimony as evidence against one party but not

3

against another or for a certain purpose and not for others.  You may consider such evidence only for the specific limited purpose for which it was admitted.

### D. ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

### E. DEPOSITION TESTIMONY

The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented under oath in the form of a deposition.  A deposition is the sworn, recorded answers to questions asked of a witness in advance of the trial.  During the trial of this case, certain deposition testimony has been presented to you by video recording or the reading of such deposition testimony.  Such testimony is entitled to the same consideration and is to be judged as to credibility, weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand in court.

### F.  EXPERT WITNESS

When knowledge of a technical matter may be helpful to the jury, a witness who has special experience or training is permitted to testify and state an opinion concerning such technical matters.  Merely because an expert witness has expressed an opinion does not mean you must accept the

opinion.  As with any other witness, it is up to you to determine the credibility or believability of the expert witness and the weight to be given the expert's testimony.  You may decide to rely on the expert's testimony or to disregard that testimony completely.

## G. IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something or failed to say or do something, that was different from the testimony the witness gave at this trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## H. CORPORATE PARTY INVOLVED

Do not let bias, prejudice or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.  A corporation can act only through people who are its agents or employees. In general, a corporation is responsible under the law for the acts and statements of its employees or agents that are made within the scope of their duties as employees or agents of the corporation.

**I. USE OF NOTES TAKEN BY JURORS**

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. Notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

**J. BURDEN OF PROOF**

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proved by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proved is more likely true than not; that means the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. A preponderance of the evidence is simply the greater weight of the credible evidence.

On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proved by clear and convincing evidence; that means you have been left with a clear conviction that the fact has been proved.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proved beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must

be proved to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

In determining whether any fact has been proved by the applicable burden of proof in this case, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the party's claim, counterclaim, or affirmative defense by the applicable burden of proof, you should find for the other party as to that claim, counterclaim, or affirmative defense.


## II. SUMMARY OF CONTENTIONS

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions. As used in this Jury Charge, "DDB" means the Plaintiff DDB Technologies, L.L.C. and "Fox Sports" means the Defendant Fox Sports Interactive Media, LLC.

DDB filed suit in this court seeking money damages from Fox Sports for allegedly infringing the DDB Patents by using the methods of the DDB Patents to provide various accused products through its website and mobile applications.

The products that are alleged to infringe are:  the GameTrax webpages for football and baseball provided through the Fox Sports website; the Scoreboard webpages for baseball provided through the Fox Sports website; the Scorestrip for baseball provided through the Fox Sports website;

7

and the GameTrax pages for baseball and football provided through Fox Sports' iPhone mobile application.

Fox Sports denies that it has infringed claims of the DDB Patents. Fox Sports also argues that the claims of the DDB Patents are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

In addition, Fox Sports argues that the DDB Patents are unenforceable because the patent applicants committed inequitable conduct while prosecuting the patent applications in the United States Patent and Trademark Office. Fox Sports also argues that DDB may not recover damages for activities occurring before this lawsuit under the doctrine of laches and that DDB is precluded from enforcing its patents against Fox Sports under the doctrine of equitable estoppel. Finally, Fox Sports contends that DDB is precluded from recovering damages for some of Fox Sports' products under the doctrine of patent exhaustion. I will instruct you on these doctrines at a later time.

Your job will be to decide whether or not the claims of the DDB Patents have been infringed and whether or not those claims are invalid. If you decide that any claim of the DDB Patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to DDB to compensate it for the infringement. You will also need to make a finding as to whether or not the infringement was willful. If you decide that any infringement was willful, that decision should not affect the damages, if any, you award. I will say more about willfulness later in this charge.

### III. THE ROLE OF THE CLAIMS OF A PATENT

Before you decide many of the issues in this case, you will need to understand the role of patent claims. The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims cover. You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. Under the law it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

### IV. HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

9

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as claim elements or claim limitations. When a thing such as a product or a process meets all of the requirements of a claim, the claim is said to cover the thing, and the thing is said to fall within the scope of the claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply those definitions that I provide to you.

By understanding the meaning of the words in the claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to answer the questions that you will be asked to answer, such as infringement and invalidity.

## V. INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent and dependent claims. An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim

10

covers.  In this case claim 1 of the '479 Patent, claim 1 of the '347 Patent, claim 1 of the '862 Patent, and claim 5 of the '587 Patent are each independent claims.

The remainder of the claims of the DDB Patents are dependent claims.  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.  A product or process that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by the dependent claim.

## VI. CLAIM INTERPRETATION

I will now explain to you the meaning of some of the words of the claims in this case.  As I have previously instructed you, you must accept my definition of these words in the claims as correct.  For any words in the claim for which I have not provided you with a definition, you should apply their common meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide, not mine.

You have been provided with copies of the '479 Patent, the '347 Patent, the '862 Patent, and the '587 Patent, as well as copies of the claim-term definitions in your juror notebooks.  You may use them in your deliberations.

The following definitions apply:

The term "broadcasting" means "the transmission of data to multiple viewer computers using one-way or two-way communication techniques."

The terms "computer simulation," "computer simulation operating in accordance with the set of rules," and "computer simulation of a given live event operating in accordance with the associated set of rules" mean "creating an animated representation of the progression of the live event that gives the viewer the illusion of physical movement using a computer algorithm on a viewer's computer that calculates the live event's current state by applying the rules of the live event to the live events' previous state and the current inputs."

The terms "computer simulation program" and "a computer simulation program that operates in accordance with the set of rules governing the event" mean "a program that creates an animated representation of the progression of the live event that gives the viewer the illusion of physical movement using a computer algorithm on a viewer's computer that calculates the live event's current state by applying the rules of the live event to the live event's previous state and the current inputs."


## VII. SPECIFIC INSTRUCTIONS

### A. INFRINGEMENT – GENERALLY

I will now instruct you as to the rules you must follow when deciding whether DDB has proved that Fox Sports infringed any of the claims of the DDB Patents. Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell or selling the patented invention within the United States during the term of the patent. Any person or business

entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

Direct infringement results if the accused infringer commits all acts necessary to infringe at least one claim of the patent either personally or through another party acting under the accused infringer's direction or control.

## B. DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL

In this case, DDB asserts that Fox Sports has directly infringed the DDB Patents.  Fox Sports would be liable for directly infringing the DDB Patents if you find that DDB has proved that it is more likely than not that Fox Sports has used the invention defined in at least one claim of the DDB Patents.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

## C. DIRECT INFRINGEMENT – LITERAL INFRINGEMENT

One form of direct infringement is literal infringement.  In order to prove literal infringement, DDB must prove that it is more likely than not that the accused Fox Sports products meet all of the requirements of the claim.  To determine literal infringement, you must compare each of the accused Fox Sports products with each claim that DDB asserts is infringed, using my instructions as to the

meaning of the patent claims.  If the accused product does not perform one or more steps recited in a claim, Fox Sports does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.  The accused Fox Sports products should be compared to the invention defined in each patent claim it is alleged to infringe, not to DDB's preferred embodiment of the invention described in the specification.  The same feature of the accused Fox Sports product may satisfy more than one element of a claim.


## D. DIRECT INFRINGEMENT – MULTIPLE ALLEGED INFRINGERS

Direct infringement requires that a party perform or use every step of a claimed method. Where no single party performs all of the steps of a claimed method, but more than one party performs every step of the method, the claim is directly infringed if one party has control over the entire method so that the steps are attributable to the controlling party.  Mere arms-length cooperation between parties is insufficient to prove direct infringement.

DDB alleges that Fox Sports and STATS collectively infringe the claims of the DDB Patents. For infringement to be proved, DDB must prove that it is more likely than not that for those steps not personally performed by Fox Sports, such steps are performed by STATS: (1) in the United States and (2) under the control or direction of Fox Sports.

14

## E. DIRECT INFRINGEMENT – THE DOCTRINE OF EQUIVALENTS

If you decide that Fox Sports' accused products do not literally infringe an asserted patent claim, you must then decide whether that those products infringe the asserted claim under what is called the doctrine of equivalents.

Under the doctrine of equivalents, if the accused infringer does not perform a particular claimed step identically, the accused infringer may still be liable for infringement if it performs that claimed step equivalently. If the accused infringer does not perform even one of the steps of the asserted claim identically or equivalently, then the accused infringer does not infringe. Thus, in making your decision under the doctrine of equivalents, you must look at each individual step of the asserted patent claim and decide whether the accused infringer performs that step either identically or equivalently.

A step performed by an accused infringer is equivalent to a claimed step if a person of ordinary skill in the art would think that the difference between the step performed by the accused infringer and the claimed step was insubstantial as of the time of the alleged infringement. One way to decide whether any difference between the step performed by the accused infringer and the claimed step is insubstantial is to consider whether, as of the time of the alleged infringement, the step of the accused infringer performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed step.

In deciding whether any difference between the step performed by the accused infringer and the claimed step is not substantial, you may consider whether, at the time of the alleged infringement, a person of ordinary skill in the art would have known of the interchangeability between the step performed by the accused infringer and the claimed step. The known interchangeability between the

15

step performed by the accused infringer and the claimed step is not necessary to find infringement under the doctrine of equivalents. A single step performed by an accused product may satisfy more than one step of a claim.

## F. LIMITATIONS ON DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Prior art may preclude a finding of infringement under the doctrine of equivalents. I will explain what prior art is, but, generally speaking, prior art is a thing, often found in references such as books, magazines, and other patents, that was already known or done before the invention. In reaching your decisions in this case, you must use the definition of prior art that I provide to you.

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents, you must first have in mind a hypothetical claim that would cover the accused, allegedly equivalent product literally. The hypothetical claim is exactly the same as the claim at issue, except that the unmet claim requirements are broadened so that they would literally be met by the accused product.

Once you have this equivalent hypothetical claim in mind, you must decide whether this hypothetical claim would have been invalid for either anticipation or obviousness. I will instruct you later on how to determine if a claim is invalid for anticipation or obviousness. You should use these same rules to determine whether or not the hypothetical claim would be invalid for anticipation or obviousness. If you determine that the hypothetical claim would have been invalid for anticipation or obviousness, then you must find that there is no infringement of this particular claim under the doctrine of equivalents.

16

Fox Sports also argues that DDB cannot assert infringement under the doctrine of equivalents due to statements that the patent applicants made to the United States Patent and Trademark Office in order to get the claims allowed in the first place.  You may not find that a product infringes a claim under the doctrine of equivalents if you find that, during the patent application process, the applicant for the patent distinguished an unmet requirement from the allegedly equivalent alternative aspect of that product.

Fox Sports also argues that DDB cannot assert infringement under the doctrine of equivalents due to an amendment to the patent application leading to the DDB Patents.  This is called prosecution-history estoppel.  You may not find that Fox Sports performing an unmet requirement of a claim under the doctrine of equivalents if that requirement was added to the claim by amendment during the prosecution of the applications that led to the issuance of the DDB Patents unless certain factors are satisfied. Specifically, in order to find equivalents, you must first also find one or more of the following: (1) the amendment that is asserted by Fox Sports to limit the scope of the equivalents substituted a broader requirement for a narrower requirement or replaced a requirement of equal scope; (2) the reason for making this amendment was not related to patentability; (3) a person having ordinary skill in the art at the time of the amendment would not have foreseen the potential substitution of the allegedly equivalent alternative for the unmet claim requirement; (4) the reason for the amendment is tangential or relates to some issue other than the assertion of equivalence at issue; or (5) some other reason, such as the shortcomings of language, prevented the applicant from using claim language that included the allegedly equivalent alternative. You may not find that Fox Sports performs a step of an asserted claim by equivalents if that requirement was added to the claim by amendment during prosecution of the applications that led

to the issuance of the patents unless you also find the existence of at least one of these factors that I have identified for you. You also may not determine that an alternative aspect of a product is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

### G. WILLFUL INFRINGEMENT

In this case, DDB argues both that Fox Sports infringed and, further, that Fox Sports infringed willfully. If you have decided that Fox Sports has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine by clear and convincing evidence that Fox Sports acted objectively recklessly.

To prove that Fox Sports acted objectively recklessly, DDB must prove two things by clear and convincing evidence:

First, DDB must persuade you that Fox Sports acted despite a high likelihood that Fox Sports' actions infringed a valid and enforceable patent. In making this determination, you may not consider Fox Sports' state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.

Only if you conclude that the Fox Sports' conduct was objectively reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of the Fox Sports. DDB must persuade you that Fox Sports actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

To determine whether Fox Sports had this state of mind, consider all facts which may include, but are not limited, to:

      1. Whether or not Fox Sports acted in accordance with the standards of commerce for its industry;

      2. Whether or not there is a reasonable basis to believe that Fox Sports did not infringe or had a reasonable defense to infringement;

      3. Whether or not Fox Sports made a good-faith effort to avoid infringing the DDB Patents, for example, whether Fox Sports attempted to design around the DDB Patents; and

      4. Whether or not Fox Sports tried to cover up its infringement.

      Fox Sports argues it did not act recklessly because it relied on a legal opinion that advised Fox Sports that it did not infringe the DDB Patents. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable. In determining whether reliance on an opinion of counsel was reasonable, you should consider factors such as whether the opinion was timely obtained, whether counsel analyzed the relevant facts, whether the opinion was rendered by independent outside counsel, whether the opinion was competent, and whether the opinion was rendered by an experienced patent attorney.

## H. INVALIDITY

      I will now instruct you on the rules you must follow in deciding whether or not Fox Sports has proved that the claims of the DDB Patents are invalid. Patent invalidity is a defense to patent infringement. Even though the United States Patent and Trademark Office ("PTO") Examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims

of the patent are valid.  To prove that any claim of a patent is invalid, Fox Sports must persuade you by clear and convincing evidence, in other words, you must be left with a clear conviction that the claim is invalid.

### I. ANTICIPATION

The patent laws of the United States require that an invention must be new for a person to be entitled to a patent.  Fox Sports asserts that the asserted claims are invalid because the claimed invention is not new or lacks novelty.  Specifically, Fox Sports asserts that the claimed invention is anticipated by prior art.

In the following instructions, I will use the term "prior art" repeatedly.  Prior art means technology and information that was publicly available before the date of invention.  The United States patent laws identify the circumstances in which a person is not entitled to a patent because the elements of the claimed invention were previously disclosed by prior art.  The specific categories of prior art that are relevant for purposes of this case include:

1. Anything that was already patented or described in a printed publication, anywhere in the world, more than a year before July 29, 1992.  An invention was patented by another if the other patent describes the same invention claimed by DDB to a person having ordinary skill in the technology.

2. Anything that was publicly used, sold, or offered for sale in the United States more than one year before July 29, 1992.  An invention was publicly used when it was either accessible to the public or commercially exploited.

You are instructed that date of invention in this case is July 29, 1992, which is also the earliest effective filing date to which the DDB Patents can claim priority.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular prior-art reference.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior invention, but also what inherently resulted from its practice. This is called "inherency." Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art and if a skilled person would understand that to be the case. A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the prior art necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application is filed. It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

When a party challenging the validity of a patent relies on prior art that was considered by the Examiner during the prosecution of the application which resulted in the issued patent, that party's ability to satisfy its clear-and-convincing-evidence burden may be more difficult. When a

21

party challenging the validity of a patent presents evidence that was not considered by the Examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy that party's clear-and-convincing-evidence burden.

### J. OBVIOUSNESS

Fox Sports also contends that the asserted claims of the asserted patents are invalid because the claimed invention is "obvious." Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art at the time the invention was made. A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the art that someone would have had on July 29, 1992, the scope and content of the prior art, and any differences between the prior art and the claimed invention. In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today. You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

The following factors must be evaluated to determine whether Fox Sports has established that the claimed invention is obvious:

1. the scope and content of the prior art relied upon by Fox Sports;

2. the difference or differences, if any, between each claim of the asserted patents and the prior art;

3. the level of ordinary skill in the art at the time the invention of the DDB Patents was made; and

4. additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Fox Sports must prove obviousness by clear and convincing evidence. Again, when a party challenging the validity of a patent relies on prior art that was considered by the Examiner during the prosecution of the application which resulted in the issued patent, that party's ability to satisfy its clear-and-convincing-evidence burden may be more difficult. When a party challenging the validity of a patent presents evidence that was not considered by the Examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy that party's highly probable evidence burden. I will now explain each of the four factors in more detail.

### Scope and Content of Prior Art

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

### *Differences Between the Claimed Invention and the Prior Art*

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it. In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. If you find that it was commonplace at the time of the invention to apply modern electronics, computer, internet, or web technology to older mechanical or electrical devices, and that the combination of this modern technology with the older devices would have yielded the claimed invention, you should find that the asserted claims are obvious.

On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long

since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.  You may also consider whether the problem or need was known, the possible approaches to solving the problem or addressing the need were known and finite, and the solution was predictable through use of a known option.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.  Again, you must undertake this analysis separately for each claim that Fox Sports contends is obvious.

### *Level of Ordinary Skill*

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the art of the patent.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems. When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1. the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

2. the types of problems encountered in the art at the time of the invention; and

3. the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

Fox Sports contends that a person of ordinary skill in the art would have at least a bachelor's degree or equivalent experience in computer science, electrical engineering, or a related field. This person would also have at least three to five years of experience with the analysis and programming of client-server applications and computer networking technology, including knowledge of various programming languages required for the implementation of such systems, and knowledge of distributed computer architectures.

DDB contends that a person of ordinary skill in the art for purposes of this case is a person having (1) a bachelor degree in computer science, software engineering, electrical engineering, or the equivalent, and (2) several years of experience in the application of at least one of these disciplines.


***Factors Indicating Nonobviousness***

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1. Commercial success of a product due to the merits of the claimed invention.

2. A long felt need for the solution provided by the claimed invention.

3. Unsuccessful attempts by others to find the solution provided by the claimed invention.

4. Copying of the claimed invention by others.

5. Unexpected and superior results from the claimed invention.

6. Acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention.

7. Whether persons having ordinary skill in the art expressed surprise or disbelief regarding the invention.

8. Other evidence tending to show nonobviousness.

The presence of these factors may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention as made. Although you should consider any evidence of these factors, the relevance and importance of them to your decision on whether the claimed invention would have been obvious is up to you.

## K. INEQUITABLE CONDUCT

Every applicant for a patent has a duty of candor and good faith in its dealing with the PTO. The duty of candor and good faith requires that every individual associated with the filing and prosecution of a patent disclose all information that the individual known to be material to patentability. This is important because the PTO has limited resources. When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with an intent to deceive the PTO, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness. This means that despite the existence and validity of the patent, the patent holder may not prevent others from using

the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Fox Sports contends that DDB may not enforce the DDB Patents against Fox Sports because individuals substantively involved in the prosecution of the DDB Patents engaged in inequitable conduct before the PTO during prosecution of that patent. Fox Sports must prove inequitable conduct by clear-and-convincing evidence. To determine whether the DDB Patents were obtained through inequitable conduct, you must determine (1) whether an individual or individuals having a duty of candor and good faith withheld or misrepresented information, or submitted false information that was material to the examination of the patent application, and (2) that the individual or individuals acted with the specific intent to deceive or mislead the PTO.

### *Materiality*

If you find that an individual having a duty of good faith and candor withheld information when applying for the DDB Patents, you must determine whether that information was material information.

Information is material if "but for" the individual's failure to disclose the information during the prosecution, the PTO would not have allowed one or more claims of the DDB Patents. In other words, information is material if it is more likely than not that the PTO would not have allowed one or more claims of the DDB Patents if the PTO had been aware of the withheld information. To decide whether the PTO would not have allowed one or more claims if it had been aware of the withheld information, you should use the broadest reasonable interpretation of the claim or claims under consideration and apply the more likely than not standard, as the PTO would have done.

28

If you decide that the PTO would not have allowed one or more claims applying this standard, then the individual's failure to disclose the information during the prosecution is material, whether or not you also find the claims invalid under the standards for finding claims invalid in this lawsuit. This does not change Fox Sports' overall burden, however, to prove its inequitable conduct defense by clear and convincing evidence.

### *Intent to Deceive*

If you determine that material information was withheld from or misrepresented to the PTO, you must next determine whether this was done with a specific intent to deceive or mislead the PTO. Intent to deceive the PTO may be found from direct evidence. You may also infer deceptive intent from the facts and surrounding circumstances. For example, when a patentee has knowingly misrepresented a material fact or submitted false material information, and when the natural consequence of those intentional acts would be to deceive the PTO, an inference of intent to deceive the PTO may be appropriate.

When the individual having a duty of good faith and candor has deliberately withheld or misrepresented known material information from the PTO, you may find that he or she acted with intent to deceive the PTO if and only if that is the single most reasonable inference to be drawn from the evidence. In order to find intent to deceive, you need to determine that the individual knew of the withheld or misrepresented information, knew the information was material, and made a deliberate and conscious decision to withhold or misrepresent the information. In determining whether there was an intent to deceive or mislead the PTO, you should consider the totality of the circumstances, including the nature of the conduct and whether that conduct occurred in good faith.

### L. LACHES

Fox Sports contends that DDB is not entitled to recover damages for acts that occurred before it filed this lawsuit because: (1) DDB delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) Fox Sports has been or will be prejudiced in a significant way to due to DDB's delay in filing the lawsuit. This is referred to as laches. Fox Sports must prove delay and prejudice by a preponderance of the evidence.

If suit was delayed for six years, a presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. The presumption shifts the burden of proof to DDB to come forward with evidence to prove that the delay was justified or that material prejudice did not result. If DDB presents such evidence, the burden of proving delay and prejudice remains with Fox Sports. Laches may also be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to Fox Sports. Whether DDB's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches. Facts and circumstances that can justify a long delay can include:

1. being involved in negotiations with Fox Sports during the period of delay;

2. poverty or illness during the period of delay;

3. being involved in a dispute about ownership of the patent during the period of delay;

4. minimal amounts of allegedly infringing activity by Fox Sports during the period of delay; or

5. being involved in other litigation during the period of delay.

30

If DDB fails to show a legally-recognized excuse for its delay, or if DDB fails to provide any evidence that Fox Sports did not suffer prejudice, then you must presume that DDB's delay was unreasonable and that Fox Sports suffered material prejudice because of DDB's delay in bringing this lawsuit. If you find unreasonable and unjustified delay occurred, you must also determine if Fox Sports suffered material prejudice as a result of the delay. Prejudice to Fox Sports can be evidentiary or economic. Whether Fox Sports suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in Fox Sports not being able to present a full and fair defense on the merits to DDB's infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to loss of important records, the death or impairment of an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not Fox Sports changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement, such as if Fox Sports could have switched to a noninfringing product if sued earlier, and also whether Fox Sports' losses as a result of that change in economic position likely would have been avoided if DDB had filed this lawsuit sooner. In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above— unreasonable delay, lack of excuse or justification, and significant prejudice. You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

### M. DAMAGES – INTRODUCTION

If you find that Fox Sports infringed any valid claim of the DDB Patents, you must then consider what amount of damages to award DDB. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate DDB for the infringement but in no event less than a reasonable royalty. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put DDB in approximately the same financial position that it would have been in had the infringement not occurred.

DDB has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that DDB establishes that it more likely than not suffered.

There are different types of damages that a patent owner may be entitled to recover. In this case, DDB seeks a reasonable royalty. A reasonable royalty is defined as the money amount DDB and Fox Sports would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

### N. DAMAGES – REASONABLE ROYALTY – DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make use or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus

on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

**O. DAMAGES – REASONABLE ROYALTY – RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patents-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor such as DDB and a licensee such as Fox Sports would have agreed upon at the time infringement began, if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.


**P. DAMAGES PERIOD**

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that Fox Sports has both infringed and been notified of the alleged

35

infringement of the DDB Patents. You must determine the date Fox Sports received actual notice of the DDB Patents and the specific products alleged to infringe. Actual notice means that DDB communicated to Fox Sports a specific charge of infringement of the DDB Patents by a specific accused product. The filing of the complaint in this case qualifies as actual notice, so the damages period begins no later than October 27, 2011. However, DDB claims to have provided actual notice prior to the filing of the complaint, in September 2003. DDB has the burden of establishing that it is more probable than not Fox Sports received notice of infringement on September 2003.

If you find that the date of actual notice was prior to October 27, 2005, then you should treat October 27, 2005 as the beginning of the damages period. The damages period ends June 25, 2010.

## VIII. CLOSING INSTRUCTIONS

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently or merely to finish the case.

Do not let bias, prejudice, or sympathy play any part in your deliberations. Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case. If there is publicity about this trial, you must ignore it. Do not read anything or listen to any TV or radio programs about the case.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

This concludes my instructions on the law in this case. You will now hear the lawyers' closing arguments. You will then retire to the jury room to deliberate on your verdict. You may take this charge with you as well as any exhibits which the court has admitted into evidence. You should first select a Presiding Juror or Foreman and then begin your deliberations. If you recess during your deliberations, you must follow the instructions the court has previously given concerning your conduct during the trial. Your duty is to fill in the form answering the jury questions to reflect your unanimous verdict. Your Presiding Juror must then sign the form. Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the lawyers your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Submitted the **11th** day of June, 2014, at **12:30** o'clock **p** .m.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE